AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Information Associated With Instagram Accounts:

█████████ wheres.pacoo

That are Stored at Premises Controlled by Meta Platforms, Inc.

)
)
)
)
)
)

Case No. **1:23-MJ-00586**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 371 | Conspiracy |
| 18 U.S.C. 1708 | Theft or Receipt of Stolen Mail Matter Generally |
| 18 U.S.C. 2114(a) | Assault of a Postal Worker |
| 18 U.S.C. 1704 | Theft of Mail Key |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Alan J. Wilkins, Special Agent, USPIS
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____FaceTime video conference_____ *(specify reliable electronic means).*

Date: **Jul 20, 2023**

_____
*Judge's signature*

City and state: Cincinnati, Ohio

Stephanie K. Bowman, United States Magistrate Judge
_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Instagram accounts ███████ and **wheres.pacoo** (active on, but not limited to, May 1, 2023 to the present), that are stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

## <u>ATTACHMENT B</u>

### Particular Things to be Seized

**I.     Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.     All business records and subscriber information, in any form kept, pertaining to the account, including:

1.     Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.     All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.     Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.     Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.     All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.     Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from October 1, 2022 to the present**;**

7.     Privacy and account settings, including change history; and

8.     Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.     All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from October 1, 2022 to the present;

C.     All content, records, and other information relating to communications sent from or received by the account from October 1, 2022 to the present, including but not limited to:

    1.     The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

    2.     All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

    3.     All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

    4.     All associated logs and metadata;

D.     All content, records, and other information relating to all other interactions between the account and other Instagram users from October 1, 2022 to the present, including but not limited to:

    1.     Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

    2.     All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

    3.     All contacts and related sync information; and

    4.     All associated logs and metadata;

E.     All records of searches performed by the account from October 1, 2022 to the present; and

F.     All location information, including location history, login activity, information geotags, and related metadata from October 1, 2022 to the present.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 1708 (Theft or Receipt of Stolen Mail Matter Generally), 18 U.S.C. § 2114(a) (Assault of Postal Worker), and 18 U.S.C. § 1704 (theft of mail key), those violations involving numerous individuals and occurring after October 1, 2022, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

A.     Evidence as to the theft of U.S. mail and USPS arrow keys.

B.     Evidence as to firearms and armed robberies, including the armed robberies of USPS postal carriers.

C.     Evidence as to the possession, rental, ownership, or use of vehicles that may have been associated with the above offenses.

D.     Evidence as to bank accounts used or transactions made to convert or launder any checks or other financial instruments.

E.     Communications between individuals involved in the above offenses.

F.     Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

G.     Evidence indicating the account owner's state of mind as it relates to the crime under investigation;

H.     The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

I.      The identity of the person(s) who communicated with the account holder about matters relating to the mail theft offenses and armed robberies, including records that help reveal their whereabouts.

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNTS ████████ and **wheres.pacoo** THAT ARE STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. <u>**1:23-MJ-00586**</u> <br><br> <u>**Filed Under Seal**</u> |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Alan J. Wilkins, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic communications service and/or remote computing service provider headquartered at 1601 Willow Road in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a United States Postal Inspector, having been so employed since June 1, 2013. I am presently assigned to the Cincinnati Field Office, Pittsburgh Division of the United States Postal Inspection Service (USPIS) with investigative responsibility for southwest Ohio and northern Kentucky.  I have gained experience through completion of the Basic Inspector Training (BIT) in August of 2013. During BIT training, I was instructed in all phases of criminal investigation, such as criminal law, search and seizure, field enforcement techniques, firearms proficiency, drug and narcotics identification, drug and narcotics field testing, interviewing and evidence collection. Since August 2013 I have worked with various federal, state, and local law enforcement agencies in the prosecution of crimes involving the U.S. Mail and the U.S. Postal Service including but not limited to mail fraud, bank fraud, mail theft, burglaries, robberies, homicides, dangerous mail investigations, and mailed narcotics.

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 1708 (Theft or Receipt of Stolen Mail Matter Generally), 18 U.S.C. § 2114(a) (Assault of Postal Worker), and 18 U.S.C. § 1704 (theft of mail key), have been committed by numerous unidentified individuals.  There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), &

2

(c)(1)(A).  Specifically, the Court "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## **PROBABLE CAUSE**

6.      The United States, including United States Postal Inspection Service, is conducting a criminal investigation of numerous individuals regarding possible violations of 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 1708 (Theft or Receipt of Stolen Mail Matter Generally), 18 U.S.C. § 2114(a) (Assault of Postal Worker), and 18 U.S.C. § 1704 (theft of mail key).

7.      **The October 17, 2022 Robbery and Recovery of the Key.**  On or about October 17, 2022, a United States Postal Service (USPS) Letter Carrier was delivering U.S. Mail and acting within their official capacity when the Letter Carrier was robbed at gun point.  The Letter Carrier was making a delivery near 3623 Whiteoak Drive, Cincinnati, OH 45247 when the Letter Carrier was approached by an unknown suspect.  The suspect pulled a firearm from their waistband, pointed it at the Letter Carrier and demanded the Letter Carrier's USPS Arrow key. The Letter Carrier complied, and the suspect ran away from the area with the Arrow key.

8.      Continuing on or about October 17, 2022, Postal Inspectors and the Green Township Police Department responded to 3623 Whiteoak Drive to investigate the robbery. Inspectors were able to determine the USPS Arrow key that was taken had a serial number of 25825409.

9.      On or about June 3, 2023, video surveillance captured two unknown suspects attempting to access USPS collection boxes at approximately 4:28AM near the corner of Delhi Road and Anderson Ferry Road in Cincinnati, OH (hereinafter referred to as the Delhi Blue Boxes").  Video surveillance shows the two suspects using a USPS Arrow key to access one collection box and steal U.S. Mail.  When the suspects attempted to access the second USPS

3

collection box, the USPS arrow key they were using became stuck in the box. The video shows one suspect struggling to remove the Arrow key without success. The suspects eventually abandoned the USPS arrow key in the collection box.

10. Postal Inspectors and local law enforcement were able to recover the USPS Arrow key which was stuck in the collection box. The arrow key found in the collection box had a serial number of 25825409 and was determined to be the same arrow key that was taken during the armed robbery on October 17, 2022, on Whiteoak Drive in Cincinnati, OH.

11. During the week of June 5, 2023, Postal Inspectors canvased the area surrounding the USPS collection boxes near the intersection of Delhi Road and Anderson Ferry Road for video surveillance of possible vehicles used during the theft of U.S. Mail on June 3, 2023. Inspectors were able to recover video of a newer gray Toyota Camry sedan with dark tinted windows and 10 spoke light gray or silver rims, which matches the description of the Subject Vehicle, as described below.

12. **The June 15, 2023 Robbery in Deer Park**. On or about June 15, 2023, a USPS Letter Carrier was robbed at gun point near 8101 Beech Avenue, Cincinnati, OH 45236. According to witness reports, at approximately 10:55AM a gray four-door sedan stopped in the road near the intersection of Oakwood Avenue and Beech Avenue (in Deer Park, Ohio). The passenger of the vehicle exited and approached the USPS Letter Carrier who was delivering U.S. Mail nearby. The suspect pointed a firearm at the stomach of the Letter Carrier and demanded the "master key", referring to the USPS Arrow key. The Letter Carrier complied with the suspect's demands and handed over the Arrow key. The suspect then returned to the front passenger side of the four-door gray sedan. The sedan fled the area driving northbound on Beech Avenue driving toward E. Galbraith Road.

4

13.     On or about June 15, 2023, Postal Inspectors were able to recover surveillance video of a newer gray four-door Toyota Camry with dark tinted windows and 10 spoke light gray or silver rims stopped near the intersection of Beech Avenue and Oakwood Avenue during the time of the robbery.  The video showed the front passenger briefly exit the vehicle and move toward the direction of the Letter Carrier and out of the cameras view, then quickly return to the vehicle.  The vehicle then left the area driving northbound on Beech Avenue as described by witnesses.  Inspectors were able to recover video showing the vehicle turn eastbound onto E. Galbraith Road.  Additional video surveillance showed the vehicle driving on E. Galbraith Road and crossing over Blue Ash Road heading toward Kenwood Road.

14.     On or about June 15, 2023, Postal Inspectors reviewed license plate reader data and images for the area near the robbery and in the direction of travel of vehicle used during the armed robbery.  A license plate reader captured a newer gray Toyota Camry with dark tinted windows bearing Ohio license plate KCC1503 (here within referred to as the Subject Vehicle 1) driving northbound on Kenwood Road near YMCA Drive in Cincinnati, OH at 10:59AM on June 15, 2023, moments after the robbery.  The license plate reader located at Kenwood Road near YMCA Drive is approximately 1.9 miles from the location of the robbery.  It is also near the entrance to Cross County Highway, SR 126.

15.     Postal Inspectors were able to obtain additional images of Subject Vehicle 1 and determined it had 10 spoke light gray or silver rims.  Inspectors also determine Subject Vehicle 1 was captured on license plate readers driving southbound on Kenwood Road near YMCA Drive in the direction of where the robbery occurred at approximately 10:26AM.

16.     Subject Vehicle 1 described above, namely the 4-Door, Gray, Toyota Camry automobile displaying Ohio License Plate KCC1503, VIN: 4T1R11AKXPU804296, is registered

5

to ███████████████████████████████████████████. ██████

purchased the Subject Vehicle in 2023.

17.     On July 14, 2023, Subject Vehicle 1 was located and identified by law enforcement. Law enforcement effected a traffic stop of the Subject Vehicle 1, which was occupied by one male individual.

18.     **The Delhi Postal Collection Boxes and July 15, 2023 Arrest.**  As noted above, on or about June 3, 2023, two unknown suspects attempted to access the USPS collection boxes near the corner of Delhi Road and Anderson Ferry Road in Cincinnati, OH (hereinafter referred to as the Delhi Blue Boxes").  The arrow key recovered from the collection box was determined to be the same arrow key that was taken during the armed robbery on October 17, 2023, on Whiteoak Drive in Cincinnati, OH.

19.     On July 8, 2023 at approximately 3:38 am, a few weeks after the Deer Park armed robbery, masked individuals driving a white Honda Pilot (Subject Vehicle 2) stole mail from the same Delhi Blue Boxes using a USPS arrow key.

6



20.   On July 10, 2023 at approximately 3:47 am, a white Honda Pilot (Subject Vehicle 2) again returned to the same area and stole mail from the Delhi Blue Boxes, using a USPS arrow key.



21.     On July 15, 2023, a white Honda Pilot (Subject Vehicle 2) pulled alongside the Delhi Blue Boxes at approximately 4:02 am. Two individuals (including defendant ALQUEZ WASHINGTON-JONES) exited the vehicle and used a USPS arrow key to gain access to the collection boxes. Working in concert, the two opened a collection box and stole the mail. The arrow key became stuck in the second collection box.

22.     Law enforcement (utilizing emergency lights) initiated a stop of the vehicle and subjects. One of the suspects jumped back into the Honda Pilot. The Honda Pilot failed to comply, drove over the curb and landscaping area beside the boxes and fled.

23.     The second individual who was stealing mail from the Delhi Blue Boxes (now identified as ALQUEZ WASHINGTON-JONES) fled on foot and was apprehended by law enforcement.

24.     USPIS Inspectors recovered the arrow key that was stuck in the Delhi Blue Boxes. They recovered arrow key 258-25167, along with USPS key tag 5211515 and various other USPS keys. An examination of the serial numbers confirmed that this was the same arrow key and related keys that were stolen from a postal carrier at gunpoint on June 15, 2023 in Deer Park.

25.     USPIS Inspectors also recovered from the person of ALQUEZ WASHINGTON-JONES a key fob for Subject Vehicle 2. Based on the key fob and information provided by a rental car company, Subject Vehicle 2 is a 2022 white Honda Pilot with Mississippi vehicle registration GAC-3866. Subject Vehicle 2 was rented by ███████████ from Enterprise beginning on June 27, 2023, due to be returned on July 17, 2023. At the time of renting Subject Vehicle 2, ███████████ provided a phone number of ██████. On July 19, 2023, ███████████ reported to police that Subject Vehicle 2 was stolen on June 27, 2023.

8

26.     **The Instagram Accounts.**  As noted above, Subject Vehicle 1 (the 4-Door, Gray, Toyota Camry involved in the Deer Park gun robbery) is registered to ████████████ ████████████████████████████████████████. ████████ purchased the Subject Vehicle in 2023.

27.    █████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████████████

28.    ███████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████
██████████████████████

29.    ████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████

30.    ███████████████████████████████████
█████████████████████████████████████████████

9

████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

31.     As noted above, a car that appeared to be Subject Vehicle 1 was seen on video
during the theft of mail on June 3, 2023 using a key from an earlier gun robbery.  Subject
Vehicle 1 was also used in the Deer Park robbery of the postal carrier at gunpoint on June 15,
2023. ████████████████████████████████████████
████

32.     ████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████
████████████████████████

33.     ████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████





34. ███████████████████████████

████████████████████████████████████

████████████████████████████████

██████████████████████████████

██████



13

35. On or about July 20, 2023, Postal Inspectors located the Instagram account

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

36. Based on the foregoing, I submit that there is probable cause to believe that evidence of the offenses is contained in the Instagram accounts ███████████ and **wheres.pacoo.**

## BACKGROUND CONCERNING INSTAGRAM[1]

37. Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

38. Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical

---

[1] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Privacy Policy," https://privacycenter.instagram.com/policy/; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

39. Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

40. Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

41. Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

42. Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to

15

avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

43.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

44.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

45.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

46.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear

16

on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

47.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

48.     Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

49.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

50.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and

retains payment information, billing records, and transactional and other information when these services are utilized.

51.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag.  Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram.  Meta retains records of a user's search history and followed hashtags.

52.     Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

53.     Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content.  Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers.  This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

54.     In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

18

55.     For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

56.     In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

57.     For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, voice messages, photos, videos, and documents (including vehicle rental activity and locations) are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

58.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, [[messaging logs, photos, and videos (and the data associated with the foregoing, such as date and time)]] may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify

19

which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

59.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

60.     Other information connected to the use of Instagram may lead to the discovery of additional evidence. For example, associated and linked accounts, stored communications, photos, and videos may reveal the individuals involved in the use of the vehicle(s) and the related mail theft and gun robberies of postal carriers. Stored communications, contact lists, photos, and videos can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

61.     Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **CONCLUSION**

62.     Based on the forgoing, I request that the Court issue the proposed search warrant.

63.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Meta. Because the warrant will be served on Meta, who will then

compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

64.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

Alan J. Wilkins
Special Agent
United States Postal Inspection Service

Subscribed and sworn to before me by reliable electronic means, specifically, FaceTime video conference on July __20__, 2023

Honorable Stephanie K. Bowman
UNITED STATES MAGISTRATE JUDGE

21

## <u>ATTACHMENT A</u>

### Property to Be Searched

This warrant applies to information associated with Instagram accounts ████████

and **wheres.pacoo** (active on, but not limited to, May 1, 2023 to the present), that are stored at

premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company

headquartered at 1601 Willow Road, Menlo Park, California.

## <u>ATTACHMENT B</u>

### Particular Things to be Seized

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.      All business records and subscriber information, in any form kept, pertaining to the account, including:

1.      Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.      All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.      Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.      Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.      All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.      Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from October 1, 2022 to the present**;**

7.      Privacy and account settings, including change history; and

8.      Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.     All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from October 1, 2022 to the present;

C.     All content, records, and other information relating to communications sent from or received by the account from October 1, 2022 to the present, including but not limited to:

       1.     The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

       2.     All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

       3.     All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

       4.     All associated logs and metadata;

D.     All content, records, and other information relating to all other interactions between the account and other Instagram users from October 1, 2022 to the present, including but not limited to:

       1.     Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

       2.     All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

       3.     All contacts and related sync information; and

       4.     All associated logs and metadata;

E.     All records of searches performed by the account from October 1, 2022 to the present; and

F.     All location information, including location history, login activity, information geotags, and related metadata from October 1, 2022 to the present.

2

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 1708 (Theft or Receipt of Stolen Mail Matter Generally), 18 U.S.C. § 2114(a) (Assault of Postal Worker), and 18 U.S.C. § 1704 (theft of mail key), those violations involving numerous individuals and occurring after October 1, 2022, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

A.    Evidence as to the theft of U.S. mail and USPS arrow keys.

B.    Evidence as to firearms and armed robberies, including the armed robberies of USPS postal carriers.

C.    Evidence as to the possession, rental, ownership, or use of vehicles that may have been associated with the above offenses.

D.    Evidence as to bank accounts used or transactions made to convert or launder any checks or other financial instruments.

E.    Communications between individuals involved in the above offenses.

F.    Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

G.    Evidence indicating the account owner's state of mind as it relates to the crime under investigation;

H.    The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

I.      The identity of the person(s) who communicated with the account holder about

matters relating to the mail theft offenses and armed robberies, including records

that help reveal their whereabouts.

———————————————

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to <u>28 U.S.C. § 1746</u>, that the information contained in this certification is true and correct. I am employed by Meta Platforms, Inc. ("Meta"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____ [**GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)**]. I further state that:

a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b.     such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

2.     the process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

6

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____

Date                              Signature

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Information Associated With Instagram Accounts:<br>▉▉▉▉▉▉▉<br>wheres.pacoo<br>That are Stored at Premises Controlled by Meta Platforms, Inc. | )<br>)<br>)<br>)<br>)<br>)    Case No.  **1:23-MJ-00586** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Southern_____ District of _____Ohio_____
*(identify the person or describe the property to be searched and give its location)*:

     SEE ATTACHMENT A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

     SEE ATTACHMENT B

**YOU ARE COMMANDED** to execute this warrant on or before _____August 3, 2023_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Duty Magistrate Judge_____ .
                                                        *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      **2:38 PM, Jul 20, 2023**          *Stephanie K. Bowman*
                                                      *Judge's signature*

City and state:      Cincinnati, Ohio          Stephanie K. Bowman, United States Magistrate Judge
                                                        *Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with Instagram accounts ████████

and **wheres.pacoo** (active on, but not limited to, May 1, 2023 to the present), that are stored at

premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company

headquartered at 1601 Willow Road, Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.    All business records and subscriber information, in any form kept, pertaining to the account, including:

1.    Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.    All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.    Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.    Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.    All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.    Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from October 1, 2022 to the present**;**

7.    Privacy and account settings, including change history; and

8.    Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.    All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from October 1, 2022 to the present;

C.    All content, records, and other information relating to communications sent from or received by the account from October 1, 2022 to the present, including but not limited to:

    1.    The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

    2.    All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

    3.    All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

    4.    All associated logs and metadata;

D.    All content, records, and other information relating to all other interactions between the account and other Instagram users from October 1, 2022 to the present, including but not limited to:

    1.    Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

    2.    All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

    3.    All contacts and related sync information; and

    4.    All associated logs and metadata;

E.    All records of searches performed by the account from October 1, 2022 to the present; and

F.    All location information, including location history, login activity, information geotags, and related metadata from October 1, 2022 to the present.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**II.      Information to be seized by the government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 1708 (Theft or Receipt of Stolen Mail Matter Generally), 18 U.S.C. § 2114(a) (Assault of Postal Worker), and 18 U.S.C. § 1704 (theft of mail key), those violations involving numerous individuals and occurring after October 1, 2022, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

A.      Evidence as to the theft of U.S. mail and USPS arrow keys.

B.      Evidence as to firearms and armed robberies, including the armed robberies of USPS postal carriers.

C.      Evidence as to the possession, rental, ownership, or use of vehicles that may have been associated with the above offenses.

D.      Evidence as to bank accounts used or transactions made to convert or launder any checks or other financial instruments.

E.      Communications between individuals involved in the above offenses.

F.      Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

G.      Evidence indicating the account owner's state of mind as it relates to the crime under investigation;

H.      The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

I.      The identity of the person(s) who communicated with the account holder about matters relating to the mail theft offenses and armed robberies, including records that help reveal their whereabouts.

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
INSTAGRAM ACCOUNTS:

███████████

**Wheres.pacoo**

THAT IS STORED AT PREMISES
CONTROLLED BY META PLATFORMS,
INC.

Case No. __1:23-MJ-00586__

**Filed Under Seal**

## APPLICATION FOR ORDER COMMANDING META PLATFORMS, INC. NOT TO NOTIFY ANY PERSON OF THE EXISTENCE OF WARRANT

The United States requests that the Court order Meta Platforms, Inc. ("Meta") not to notify any person (including the subscribers and customers of the account(s) listed in the warrant of the existence of the attached warrant for one year.

Meta is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Pursuant to 18 U.S.C. § 2703, the United States obtained the attached warrant, which requires Meta to disclose certain records and information to the United States. This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.*

In this case, such an order would be appropriate because the attached warrant relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly,

8

there is reason to believe that notification of the existence of the attached warrant will seriously jeopardize the investigation or unduly delay a trial, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, intimidate potential witnesses, or endanger the life or physical safety of an individual. *See* 18 U.S.C. § 2705(b). Some of the evidence in this investigation is stored electronically. If alerted to the existence of the warrant, the subjects under investigation could destroy that evidence, including information saved to their personal computers.

WHEREFORE, the United States respectfully requests that the Court grant the attached Order directing Meta not to disclose the existence or content of the attached warrant for one year, except that Meta may disclose the attached warrant to an attorney for Meta for the purpose of receiving legal advice.

The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Executed on July 20, 2023.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

*s/ Timothy S. Mangan*
TIMOTHY S. MANGAN
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
INSTAGRAM ACCOUNTS:

██████████████
**Wheres.pacoo**

THAT IS STORED AT PREMISES
CONTROLLED BY META PLATFORMS,
INC.

Case No.   **1:23-MJ-00586**

**Filed Under Seal**

## ORDER

The United States has submitted an application pursuant to 18 U.S.C. § 2705(b),

requesting that the Court issue an Order commanding Meta Platforms, Inc. ("Meta"), an

electronic communication service provider and/or a remote computing service, not to notify any

person (including the subscribers and customers of the account(s) listed in the warrant) of the

existence of the attached warrant until **July 20, 2024**.

The Court determines that there is reason to believe that notification of the existence of

the attached warrant will seriously jeopardize the investigation or unduly delay a trial, including

by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper

with evidence, change patterns of behavior, intimidate potential witnesses, or endanger the life or

physical safety of an individual. *See* 18 U.S.C. § 2705(b).

IT IS THEREFORE ORDERED under 18 U.S.C. § 2705(b) that Meta shall not disclose

the existence of the attached warrant, or this Order of the Court, to the listed subscriber or to any

other person, for a period of one year, except that Meta may disclose the attached warrant to an

attorney for Meta for the purpose of receiving legal advice.

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court.

Jul 20, 2023
_____
Date

*Stephanie K. Bowman*

HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

2

*AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)*

| **Return** | | |
|---|---|---|
| *Case No.:*<br>1:23-MJ-00586 | *Date and time warrant executed:*<br>07/20/2023 3:12 PM | *Copy of warrant and inventory left with:*<br>On File |

*Inventory made in the presence of :*
A.W. Kremer, Postal Inspector

*Inventory of the property taken and name of any person(s) seized:*

Electronic PDF of information requested in Attachment A and Attachment B of the warrant.  Information was digitally delivered.  Agents received information associated with Instagram accounts ███████ and "wheres.pacoo" from May 1, 2023 to July 20, 2023.

| **Certification** |
|---|

    *I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.*

*Date:*      12/2/2024

*Executing officer's signature*

Alan J. Wilkins, United States Postal Inspector

*Printed name and title*

US-000001